United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TREMAYNE J. COLLIER,

    Petitioner,

    v.

ANTHONY HEDGPETH, Warden,

    Respondent.
                                   /

No. C 07-5964 SI (pr)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

## BACKGROUND

In July 2004, Petitioner was tried for the May 1999 robbery and assault of Ray LaBonte, and in a separate incident on the same night, robbery and murder of Shayne Worcester. A San Francisco Superior Court jury found Petitioner guilty of murder with special circumstances for the murder of Worcester, Cal. Pen. Code § 187 & 190.2 (a)(17)(A); guilty of the robbery of Worcester, id. § 212(c); and guilty of the robbery of LaBonte, id. § 212(c). The jury found true allegations that Petitioner was armed with a firearm as to each count, id. § 12022(a)(1). Petitioner waived his right to a jury trial on charges that he had a prior strike, id. 667(a), (d) & (e), 1170.12(c), and had served two prior prison terms, id. § 667.5(b). The trial court sentenced Petitioner to thirteen years plus fifty-one years to life in state prison. Petitioner appealed. The California Court of Appeal for the First Appellate District affirmed the judgment. (Ans., Ex. 4

at 1.) The California Supreme Court denied Petitioner's petition for review. (Id., Ex. 6.) Petitioner filed state habeas petitions, all later denied, in the California superior, appellate and supreme courts.[1]

Evidence was presented at trial that Petitioner picked up three accomplices (Edwards, Mooring and Kennedy) in his car and drove around San Francisco committing crimes with them. Edwards and Mooring, who had a .22 caliber rifle with him, stepped out of Petitioner's car and robbed LaBonte. Mooring struck LaBonte in the face with the butt of the rifle hard enough to cause unconsciousness. Later that evening, in another location, Petitioner and Mooring attacked Worcester and his friend Christopher Farley, robbing Worcester and then shot Worcester, killing him. (Ans., Ex. 4 at 2–3 & 4–5.)

Petitioner and Mooring were tried separately. Edwards and Kennedy pleaded guilty to lesser charges, and both testified against Petitioner at trial.

As grounds for federal habeas relief, Petitioner alleges that (1) there was insufficient evidence to support his convictions, (2) the trial court violated his rights by denying his motion to discharge a juror; (3) the prosecutor committed misconduct; (4) his sentence is cruel and unusual in violation of the Eighth Amendment; (5) trial counsel rendered ineffective assistance; (6) appellate counsel rendered ineffective assistance; (7) the trial court's admission of evidence of an unrelated crime violated his right to due process; (8) the prosecutor failed to disclose a police report to the defense; (9) the trial court violated his right to due process when it denied his motion to exclude a witness; (10) the prosecutor improperly cross-examined a witness; (11) the trial court violated his right to due process when it gave an instruction regarding unjoined perpetrators; and (12) the trial court's admission of a photograph of the victim violated his right to due process.

---

[1] The San Francisco Superior Court's order is the last reasoned opinion. However, that order does not analyze the merits of Petitioner's claims on the grounds that Petitioner failed to raise these claims on appeal. The superior court reached the merits of a single claim, that of the effectiveness of appellate counsel. (Pet., Ex. C at 1–2.) Accordingly, the Court will regard the state appellate court's opinion on direct review of Petitioner's appeal as the last reasoned decision.

2

**STANDARD OF REVIEW**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

**DISCUSSION**

**I.   Sufficiency of the Evidence**

Petitioner claims that the evidence to support his robbery and murder convictions was

3

insufficient. More specifically, Petitioner contends that Willie Kennedy, who had provided accomplice testimony against Petitioner, had been coerced, or had been made promises of leniency in exchange for testifying against Petitioner. (Pet. at 6a.) The state appellate court rejected this claim on state law grounds.

The relevant facts are as follows. After arrest, Kennedy made a statement to the police regarding the criminal events he witnessed. After indictment, Kennedy entered into a plea agreement with the prosecutor. Under this agreement, Kennedy pleaded guilty to a felony charge of being an accessory after the fact, and was given a suspended sentence and placed on three years probation with one day in jail. Kennedy also had to testify against Petitioner at trial. (Ans., Ex. 4 at 10, 25.)

Kennedy testified at trial. Trial counsel had moved to preclude Kennedy from testifying, on the grounds that his pretrial statement to police was the result of coercion, and his trial testimony would be inherently unreliable because he had entered into a plea agreement, a motion the trial court denied. At trial, Kennedy identified Petitioner as one of the "principal perpetrators" of the Worcester murder, and a participant in the robberies.

Kennedy's testimony provided evidence sufficient to show that Petitioner committed acts that satisfy the elements of the crimes of which he was convicted. Specifically, after viewing Kennedy's testimony in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992).

That, however, is not the gravamen of Petitioner's claim. Petitioner's claim is, in truth, a credibility claim, that is whether Kennedy's testimony is credible in light of the plea agreement he made with the prosecution. A federal district court must accord the state trial court's credibility determination the highest deference. See Knaubert v. Goldsmith, 791 F.2d 722, 727 (9th Cir. 1986). In light of this, the Court must defer to the jury's credibility finding. Kennedy testified at trial to events he participated in and those which he observed. Whether his testimony was to be believed was a matter for the jury. The jury's credibility determination was informed

4

by its knowledge that Kennedy was testifying in exchange for a beneficial plea agreement. Kennedy even admitted to the jury that he felt lucky to have his plea agreement. (Ans., Ex. 4 at 27.) Trial counsel was free at all times to question Kennedy's credibility, even raising the possibility that his statements to police had been coerced. The jury could use this information to reject Kennedy's testimony, or to be wary of it. The jury, then, considered Petitioner's credibility challenge, and, as evidenced by the verdict, rejected it, and found Kennedy's testimony credible. On this record, Petitioner has not shown that the trial court's admission of Kennedy's pretrial statement or his trial testimony violated his right to due process. Petitioner's claim is DENIED.

## II. Denial of Motion to Exclude a Juror

Petitioner claims that the trial court violated his right to a fair trial when it denied his motion to exclude Juror No. 11 because of her exposure to improper third-party communications. (Pet. at 6r.) The state appellate court did not address this claim in its written opinion.

During trial, Juror No. 11, while walking down the courthouse hallway, heard a woman, who was with two men, say, "And there's juror number 11, as we speak." The juror said nothing to the woman, who was a stranger to her. After hearing of the incident, the trial court held an in-chambers hearing regarding the matter at which the juror, the prosecutor and defense counsel were present. During this hearing, the juror stated that she had felt a little threatened by the statement, but that she felt that she could be fair to both sides, and she could "absolutely" set the incident aside. The juror also stated that she had not told any of the other jurors about the incident. (Ans., Ex. 2B at 488–498.) The next day, trial counsel moved to exclude Juror No. 11, a motion the trial court denied. (Id. at 502–05.)

At a later date, Juror No. 11 also reported that two of her co-workers had tried to extract information about the trial from her, and had also said, referring to Petitioner, "Burn him," and "hang 'em high." (Ans., Ex. 2D at 878, 881.) The juror stated that she told her co-workers that she could not discuss the case. The juror assured the trial court that she could continue to be fair

to both sides in the trial. A few days later, Juror No. 11 reported to the trial court that her concerns had been resolved. Her co-workers, she felt, would not ask her questions about the trial and she also felt that her job was not in danger. Trial counsel did not make another motion to exclude Juror No. 11.

"[P]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." Mattox v. United States, 146 U.S. 140, 142 (1892). In determining whether an unauthorized communication raised a risk of tainting the verdict under Mattox, courts should consider factors such as whether the unauthorized communication concerned the case, the length and nature of the contact, the identity and role at trial of the parties involved, evidence of actual impact on the juror, and the possibility of eliminating prejudice through a limiting instruction. See Caliendo v. Warden of California Men's Colony, 365 F.3d 691, 697–98 (9th Cir. 2004) (critical prosecution witness's unauthorized conversation with multiple jurors for twenty minutes was possibly prejudicial under Mattox, even if conversation did not concern the trial); Dickson v. Sullivan, 849 F.2d 403, 405 (9th Cir. 1988) (remark of deputy sheriff that defendant had "done something like this before," made within hearing of two jurors, was directly related to material issue, highly inflammatory and presumptively prejudicial).

Petitioner's claim must fail, because there is no evidence that the third-party communication tainted the jury's verdict, as a review of the record through the lenses of Caliendo, Mattox, and Dickson makes clear. Using the Caliendo factors, the evidence shows that the first communication did not relate to the facts or the issues of the case, but rather was a declaration that identified the juror as Juror No. 11, and contained no hint as to how the juror should vote or any evidence regarding the case. The second communication was a general comment that revealed the persons' feelings about crime and punishment. In short, the comments were of brief duration and their natures were not specific to the case. The third-parties had no direct role in the case (unlike the situations presented in Dickson and

Caliendo), and the actual impact on the jury was minimal — Juror No. 11 repeatedly and unequivocally stated that she could be fair and impartial, and even that her concerns about her co-workers had disappeared. Furthermore, it appears that only Juror No. 11 was subject to these communications, the other jurors being entirely ignorant of the incidents.

Furthermore, the trial court's determination that Juror No. 11 was not biased is a factual finding to which this Court must defer. See 28 U.S.C. § 2254(e). Finally, because jurors are presumed to follow the court's instructions, see Richardson v. Marsh, 481 U.S. 200, 206 (1987), this Court presumes that the trial court's instruction to Juror No. 11 to base her decision on what she heard in the courtroom eliminated the risk of the third-party communication tainting the verdict. On this record, the Court concludes that Petitioner has not shown that Juror No. 11's third-party communications tainted the verdict. Accordingly, this claim is DENIED.

### III.    Alleged Prosecutorial Misconduct

Petitioner claims that the prosecutor committed misconduct by (A) eliciting accomplice testimony from Edwards that Petitioner had been in custody on the current charges prior to trial and (B) commenting on Petitioner's failure to testify at trial. (Pet. at 6v & 6x.) The state appellate court did not rule on this claim in its written opinion.

A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181 (1986). Under Darden, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. Tan v. Runnels, 413 F.3d 1101, 1112 (9th Cir. 2005). A prosecutorial misconduct claim is decided "on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process." Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).

The first factor in determining the prejudicial effects of misconduct is whether the trial court issued a curative instruction. When a curative instruction is issued, a court presumes that

7

the jury has disregarded inadmissible evidence and that no due process violation occurred. See Greer v. Miller, 483 U.S. 756, 766 n.8 (1987). This presumption may be overcome if there is an "overwhelming probability" that the jury would be unable to disregard evidence and a strong likelihood that the effect of the misconduct would be "devastating" to the defendant. Id. at 766 n.8. Other factors that a court may take into account in determining whether misconduct rises to the level of due process violation are: (1) the weight of evidence of guilt, U.S. v. Young, 470 U.S. 1, 19 (1985); (2) whether the misconduct was isolated or part of an ongoing pattern, see Lincoln v. Sunn, 807 F.2d 805, 809 (9th Cir. 1987); (3) whether the misconduct relates to a critical part of the case, see Giglio v. United States, 405 U. S. 150, 154 (1972) (failure to disclose information showing potential bias of witness especially significant because government's case rested on credibility of that witness); and (4) whether a prosecutor's comment misstates or manipulates the evidence, see Darden, 477 U.S. at 182.

### A. Reference to Petitioner's Being in Custody

At trial, the prosecutor asked Edwards about an incriminating letter Petitioner had written and then passed to Edwards while the pair were in custody. In the letter, Petitioner admits that he drove around with Edwards and the other accomplices, and that he was in the area of the criminal events, but does not state that he had any involvement in the robberies or the killing. (Ans., Ex. 2K at 1837–48.) As part of this inquiry, the prosecutor elicited from Kennedy the fact that Petitioner was in custody prior to trial. (Id. at 1826–27.)

The Court concludes that Petitioner has not shown that the prosecutor's remarks were improper. A prosecutor's reference to the fact that a defendant is in custody can undermine the presumption of innocence. U.S. v. Washington, 462 F.3d 1124, 1136–37 (9th Cir. 2006). However, when there is a an obvious and relevant "state purpose" for making such a fact known to the jury, the prosecutor did not make such a fact known in bad faith. Id. at 1137.

Here, the letter's relevance is clear — in it, Petitioner places himself in the company of the accomplices to the crimes, and in the vicinity of the criminal events. Revealing that the letter

8

was written in custody and then transferred to Kennedy was relevant to establish the letter's provenance. On these facts, Petitioner has not shown that the prosecutor's comments are improper, nor that they rendered the trial fundamentally unfair.

Even if the statement was improperly elicited, Petitioner has not shown that the its elicitation resulted in a due process violation. First, the evidence of Petitioner's guilt was strong, including the testimony of several eyewitnesses to the crime. Second, this alleged misconduct does not seem to be part of an on-going pattern. Petitioner has pointed to one other alleged instance, and the merits of that claim are addressed in the next section. Finally, the revelation does not relate to a critical part of the case — it did not go directly toward Petitioner's guilt or innocence — nor has Petitioner shown that the prosecutor manipulated the evidence. On this record, the Court DENIES Petitioner's claim.

### B.     Alleged Reference to Petitioner's Refusal to Testify

The Court concludes that Petitioner's claim that the prosecutor commented on Petitioner's refusal to testify is without merit. The comments to which Petitioner objects were comments on a lack of evidence, and in no way directly or indirectly referred to the fact that Petitioner did not testify at trial — the prosecutor stated that the gunshot residue expert was "never challenged," that there was "no evidence" challenging the fact that Petitioner and his accomplices were friends, and that Petitioner himself said some time before trial that there was "no case against" Kennedy. (Ans., Ex. 3M at 2740 & 2747; Ex. 3N at 2810–11.)

Where a prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, or to treat the defendant's silence as substantive evidence of guilt, the defendant's privilege against compulsory self-incrimination is violated. See Griffin v. California, 380 U.S. 609, 615 (1965). While it is proper for the prosecution to address the defense arguments, a comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. See Lincoln v. Sunn, 807 F.2d 805,

9

809 (9th Cir. 1987) (citing U.S. v. Bagley, 772 F.2d 482, 494 (9th Cir. 1985).

Here, the prosecutor made permissible comments on the state of the evidence. Petitioner simply has not shown that these comments were "manifestly intended to call attention to" his failure to testify. On this record, the Court DENIES Petitioner's prosecutorial misconduct claims.

**IV.    Sentence**

Petitioner claims that his sentence of thirteen years, plus fifty-one years to life violates the Eighth Amendment's prohibitions against cruel and unusual punishments. (Pet. at 6aa.) The state appellate court did not address this claim in its written opinion.

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment. Solem v. Helm, 463 U.S. 277, 303 (1983). But "outside the context of capital punishment, successful challenges to the proportionality of particular sentences will be exceedingly rare." Id. at 289–90. Eighth Amendment jurisprudence "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle — the precise contours of which are unclear." Lockyer v. Andrade, 538 U.S. 63, 76 (2003) (internal quotations and citations omitted). "The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." Ewing v. California, 538 U.S. 11, 23 ( 2003) (quoting Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).

A challenge to the proportionality of a sentence is analyzed using objective criteria, including:  (1) the gravity of the offense and harshness of the penalty; (2) a comparison of sentences imposed on other criminals in the same jurisdiction; and (3) a comparison of sentences imposed for the same crime in other jurisdictions. Solem, 463 U.S. at 290–92. Substantial deference is granted to a legislature's determination of the types and limits of punishments for crimes. See U.S. v. Gomez, 472 F.3d 671, 673–74 (9th Cir. 2006).

However, where it cannot be said as a threshold matter that the crime committed and the sentence imposed are grossly disproportionate, it is not appropriate to engage in a comparative analysis of the sentence received by the defendant to those received by other defendants for other crimes. See U.S. v. Harris, 154 F.3d 1082, 1084 (9th Cir. 1998).

In Harmelin, the Supreme Court upheld a life sentence, without the possibility of parole, for an offender with no prior felony convictions who had been convicted of possessing 672 grams of cocaine. 501 U.S. at 995, 961. In Andrade, the Supreme Court upheld a sentence imposed under a recidivist statute where the defendant's final offense was the theft of $150 worth of videotapes from two stores. 538 U.S. at 66. The Supreme Court also upheld a life sentence under a recidivist statute for an inmate whose crime was obtaining $120.75 by false pretenses. Rummel v. Estelle, 445 U.S. 263, 266, 285 (1980).

Under these standards, this Court concludes that Petitioner has not established that his sentence was grossly disproportionate to his crimes, especially considering that the defendants in Andrade, Rummel, and Harmelin faced life or very lengthy sentences for nonviolent offenses, whereas Petitioner committed violent crimes, one of them murder. More specifically, if Harmelin's life sentence for a nonviolent drug possession crime is found not to violate the Eighth Amendment, the Court cannot say that Petitioner's sentence for a highly violent murder violates the Eighth Amendment. Because Petitioner has not made the threshold showing that the crime committed and the sentence imposed are grossly disproportionate, see Harris, 154 F.3d at 1084, this Court's Eighth Amendment analysis is at an end. Accordingly, the Court DENIES Petitioner's claim.

### V.   Assistance of Counsel

Petitioner claims that trial counsel rendered ineffective assistance when he failed to locate and call to testify two potential defense witnesses, Leslie Devlin and Tiyon Ford. (Pet. at 6cc-6dd.) Petitioner contends that Devlin would have testified that Kennedy told her that Petitioner and his accomplices were under the influence of drugs at the time of the criminal acts. (Id. at

6cc.) Ford, according to Petitioner, would have testified that Petitioner intervened when Kennedy tried to assault Ford before the robbery of LaBonte. (Id. at 6dd.) Petitioner further contends that trial counsel was ineffective in failing to call an expert witness to testify that Petitioner was so intoxicated at the time of the crimes that he could not have formed the requisite criminal intent. (Id. at 6ee.)

Claims of ineffective assistance of counsel are examined under Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687–68. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. It is unnecessary for a federal court considering a habeas ineffective assistance claim to address the prejudice prong of the Strickland test if the petitioner cannot even establish incompetence under the first prong. See Siripongs v. Calderon, 133 F.3d 732, 737 (9th Cir. 1998).

Applying these legal principles to the instant matter, the Court concludes that Petitioner's claims are without merit. As to the first claim, the record shows that trial counsel did try to locate both Devlin and Ford, and tried to compel their appearance in court. However, Devlin left the court's jurisdiction before she could be served with a subpoena (Ans., Ex. 1D at 828) and Ford ignored his subpoena (id., Ex. 1F at 1171). On these facts, Petitioner has failed to show that trial counsel's performance was deficient. Rather, the record shows that trial counsel tried to compel Devlin and Ford to testify at trial. Because Petitioner has failed to show that there was a deficient performance, the Court need not consider whether he suffered prejudice.

Petitioner's claim that trial counsel rendered ineffective assistance by failing to call an expert witness is without merit. Tactical decisions of trial counsel, such as trial counsel's decision not to call an expert witness, deserve deference when: (1) counsel in fact bases trial conduct on strategic considerations; (2) counsel makes an informed decision based upon investigation; and (3) the decision appears reasonable under the circumstances. See Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994). Petitioner has not provided more than undeveloped assertions that an expert witness would have been helpful, that is, that he would have testified as Petitioner thinks such a witness would have testified. Petitioner simply states that his trial counsel should have called an expert to testify as to the possible effects of intoxication by drugs, without stating to what extent he (Petitioner) was allegedly intoxicated, and how specifically he could not form the intent to commit these crimes. Based on these considerations, the Court concludes that the tactical decision of trial counsel was reasonable under the circumstances.

Petitioner also has not shown prejudice. There was strong evidence that, even if he were intoxicated, Petitioner knew the nature and consequences of his actions, including testimony that Petitioner drove the car, collected the accomplices in order to commit crime, and perpetrated crimes himself. This claim is DENIED.

## VI.  Assistance of Appellate Counsel

Petitioner claims that his appellate counsel rendered ineffective assistance by failing to raise the previous five claims on direct appeal. (Pet. at 6hh.)

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668 (1984). Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir. 1986). A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Miller, 882 F.2d at 1434 & n.9 (citing Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849).

Applying these legal principles to the instant matter, the Court finds that Petitioner's claim is without merit. As discussed above, the Court has found that Petitioner fails to show any constitutional violations in the previous five claims. Because these claims are without merit, appellate counsel's failure to present them on appeal cannot constitute a deficient performance. Petitioner also had not shown prejudice. As shown above, the previous five claims lack merit, Petitioner has not shown that they would have prevailed on appeal. This claim is DENIED.

**VII.  Admission of Separate Crime Evidence**

Petitioner claims that the trial court violated his due process rights by admitting evidence of an ATM robbery Petitioner committed three weeks after the criminal events at issue here. (Pet. at 6ii.) Petitioner contends that this is improper character evidence. (Id. at 6jj-6kk.) The state appellate court rejected this claim, finding that the trial court did not abuse its discretion when it admitted evidence of the ATM robbery because that crime was sufficiently similar to the LaBonte and Worcester robberies. (Ans., Ex. 4 at 17.) The state appellate court further found that the trial court gave adequate instructions to the jury that the ATM robbery evidence was to be used solely to determine knowledge and intent. (Id. at 17–18.)

The trial court, upon a motion by the prosecution, admitted evidence of the above robbery to show Petitioner's

> knowledge and intent, because the ATM [r]obbery was close in time to the Worcester shooting, a similar weapon (a rifle) was used, it was a "prone-out" robbery in which [Petitioner] put his foot on [the victim's] neck (similar to what was done to Worcester), and the same car was used in both incidents. The court later observed that the evidence was relevant to show [Petitioner's] knowledge of firearms and to refute any claim of mistake, accident, or lack of intent.
>
> Before any testimony at trial concerning the ATM [r]obbery, the court instructed the jury that the evidence was being admitted to show only [Petitioner's] intent in the charged crimes, that it could not be used "to prove that [Petitioner] is a person of bad character or that he has a disposition to commit crimes," and that it could not be used for any other purpose.

(Ans., Ex. 4 at 13.)

Petitioner had admitted in his letter (Ans., Ex. 2K at 1837–48) to being present at the events, but had asserted that he was not a participant in them. Specifically, he admitted that he

14

1 drove the accomplices in his car, but stated that he had "no idea that any type of robbery had
2 taken place," even after picking up two accomplices who had allegedly committed the crime.
3 (Id., Ex. 2K at 1840.) Petitioner also admitted in the letter that two accomplices left his car, and
4 soon after he heard gunshots, and then saw the two accomplices heading back to the car. (Id.
5 at 1842.)

6 Petitioner's claim due process claim as to the ATM robbery must be denied. The
7 admission of evidence is not subject to federal habeas review unless a specific constitutional
8 guarantee is violated or the error is of such magnitude that the result is a denial of a
9 fundamentally fair trial guaranteed by due process. See Henry v. Kernan, 197 F.3d 1021, 1031
10 (9th Cir. 1999). As to whether a constitutional guarantee has been violated, the Supreme Court
11 has left open the question of whether admission of propensity evidence violates due process.
12 Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991). Based on the Supreme Court's reservation of
13 this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right
14 concerning the admission of propensity evidence — such as Petitioner's ATM robbery — is not
15 clearly established as required by AEDPA. Alberni v. McDaniel, 458 F.3d 860, 866–67 (9th Cir.
16 2006).

17 As to the question of the magnitude of the error, only if there are no permissible
18 inferences that the jury may draw from the evidence can its admission violate due process such
19 that Petitioner was denied a fundamentally fair trial. See Jammal v. Van de Kamp, 926 F.2d 918,
20 920 (9th Cir. 1991). The prosecutor offered evidence of the ATM robbery conviction to show
21 that Petitioner had the intent and the knowledge to commit the accomplice robberies and the
22 killing. As the state appellate court emphasized, both crimes involved the use of Petitioner's car,
23 a similar weapon, a street robbery of a victim, and taking money directly from the victim. It was
24 permissible for the jury to infer from the ATM robbery that Petitioner had a knowledge of guns
25 and of how to commit a crime similar to the robberies at issue here. Also, this Court must
26 assume that the jurors followed the trial court's instructions they could use the evidence solely
27 as to the issue of intent in the charged crimes, not for character purposes. On this record,
28

15

Petitioner has not shown that the admission of the evidence resulted in a fundamentally unfair trial. Based on this reasoning, the Court DENIES this claim.

**VIII. Late Disclosure of Police Report**

Petitioner claims that the prosecution failed to timely give the defense a copy of a police report, in violation of Brady v. Maryland, 373 U.S. 83 (1963). (Pet. at 6pp.) The state appellate court rejected this claim, finding that though the prosecutor was "derelict" in disclosing the police report, Petitioner had not shown that it was reversible error. (Ans., Ex. 4 at 18.)

On June 28, 2004, the prosecution became aware of a supplemental police report, but did not give a copy of it to the defense until July 20, the day before the defense was scheduled to call its last witness at trial. Written by Lieutenant Ridgway, the report contains Ridgway's notes about his interview of Kennedy. (Audiotapes of the Ridgway-Kennedy interview had been timely disclosed to the defense.) The state appellate court concluded that the Ridgway report "did not contain any evidence particularly favorable to [Petitioner]":

> It did indicate that Ridgway believed Kennedy lied about staying in the car during the Worcester robbery and murder (because he was able to describe the shooting incident in detail), and that Kennedy "showed clear signs of deception when telling" Ridgway the gun "had been thrown over the side of the Oakland Bay Bridge." However, there was no indication in the Ridgway report that Kennedy lied about [Petitioner's] participation, and Ridgway testified that he believed Kennedy's basic account.

(Ans., Ex. 4 at 23–24.)

Trial counsel argued at trial that the late disclosure of the Ridgway report precluded effective cross-examination of "key" prosecution witnesses. (Id. at 22.) Although audiotapes of this interview had been timely disclosed to the defense, trial counsel stated that the tapes were difficult to understand, making the Ridgway report important to preparing a defense. (Id. at 19.) The Court notes that trial counsel also had a transcription of the audiotaped interviews, which contained the statement by Ridgway that he was going to write report about his conversation with Kennedy.

In response to the news of the late disclosure, the trial court offered to grant trial counsel

a continuance so that he could recall and re-examine witnesses; trial counsel declined, except that he did recall one inspector and examine him on the report. (Id. at 20.) The trial court denied trial counsel's two motions to dismiss, and instructed the jury that the weight and significance of any concealment "are matters for your consideration." (Id., Ex. 3M at 2676–77.) The trial court further instructed the jury that it could consider whether the late-disclosed evidence was "exculpatory, pertains to a fact of importance, something trivial, or to subject matters already established by other credible evidence." (Id.)

Delay in disclosure does not deprive an accused of due process where disclosure is made at pretrial conference, see Reiger v. Christensen, 789 F.2d 1425, 1432 (9th Cir. 1986), or during trial where the disclosure, though tardy, is still of value to the accused, see U.S. v. Vgeri, 51 F.3d 876, 880 (9th Cir. 1995). Due process requires only the disclosure of exculpatory material is made in sufficient time to permit defendant to make effective use of the material. See LaMere v. Risley, 827 F.2d 622, 625 (9th Cir. 1987).

Applying these legal principles to the instant matter, the Court concludes that Petitioner has not shown that the delayed disclosure violated his constitutional rights. First, the trial court granted trial counsel an opportunity to recall witnesses in order to examine them regarding the report. That trial counsel refused this opportunity does not result in a due process violation by the trial court. Second, the report did not contain any exculpatory evidence, or much significant exculpatory evidence. Third, audiotapes and a transcript of the Ridgway-Kennedy interview had been timely disclosed to the defense. In that interview, Ridgway stated that he would write a report about the interview. Though this did not relieve the prosecutor of his burden to disclose relevant information to the defense in a timely manner, trial counsel was put on notice that such a report might exist. Taking all these considerations into account, the Court concludes that Petitioner has not shown that the delayed disclosure violated his due process rights. Accordingly, Petitioner's claim is DENIED.

**IX.    Denial of Motion to Exclude Kennedy's Testimony**

Petitioner claims that the trial court violated his right to due process when it denied his motion to exclude Kennedy's allegedly coerced testimony. (Pet. at 6vv.)

The Court has addressed the merits of this claim above. Accordingly, Petitioner's claim is DENIED.

**X.    Cross-Examination**

Petitioner claims that on cross-examination by the prosecutor, Lieutenant Ridgway "gave an improper opinion of Kennedy's truthfulness." (Pet. at 6bbb.) The state appellate court rejected this claim, finding that even if Ridgway improperly volunteered an opinion of Kennedy's veracity, trial counsel "had opened the door to the prosecutor's inquiry." (Ans., Ex. 4 at 31.)

During direct examination, Petitioner's trial counsel asked Ridgway questions related to his supplemental report, including Ridgway's statements that he felt Kennedy was not being truthful when asked about the murder weapon. (Ans., Ex. 2R at 2552.) On cross-examination, the prosecutor elicited testimony from Ridgway that Kennedy was very forthcoming and opened up until the point Ridgway asked about the gun. Petitioner's counsel moved for a mistrial on the grounds that Ridgway had vouched for Kennedy's truthfulness. The trial court denied the motion, stating that Petitioner's counsel had opened the door for such questions when he asked Ridgway about Kennedy's signs of deception. (Id. at 2581.) The trial court instructed the jury should disregard any opinions from law enforcement witnesses on the believability of any witness. (Id. at 2681.)

Petitioner's claim is without merit. First, the prosecutor's questions were a permissible rebuttal to Petitioner's counsel's questions about Kennedy's possible deceptiveness. Second, Ridgway did not say that Kennedy was truthful. Rather, on direct examination by Petitioner's counsel, Ridgway admitted that his report stated that Kennedy "showed clear signs of deception." Also, significantly, Ridgway, in response to Petitioner's counsel's question whether

1 he (Ridgway) formed any opinion of whether Kennedy was telling the truth during the interview, said, "No. Actually, I think, at the time, I though he wasn't telling the truth. It seemed too convenient." (Ans., Ex. 4 at 29.) Rather than vouching for his truthfulness, Ridgway was calling it into question. On this record, the Court concludes that Petitioner has failed to show that the prosecutor's comments rendered the trial fundamentally unfair and therefore in violation of due process. The Court DENIES Petitioner's claim.

## XI.   Instruction on Unjoined Perpetrators

The trial court included in the instructions CALJIC No. 2.11.5, which states that a jury should give no consideration to why other persons who may be responsible for the crimes are not on trial too. (Ans., Ex. 3M at 2672.) Petitioner claims that this conflicted with the defense's attempt to undermine the credibility of Kennedy and Edwards by pointing out that they had pleaded guilty and therefore avoided trial. (Pet. at 6fff.) The state appellate court disposed of this claim on state law grounds.

Petitioner's claim is without merit. First, Petitioner has not shown that this is a federal constitutional claim, or that he has a clearly established right to preclude the trial court from issuing such an instruction. Second, even if Petitioner has presented a federal claim, CALJIC No. 2.11.5 merely restricts the jury from considering why someone is not on trial. It does not preclude the jury from considering the fact that Kennedy and Edwards avoided trial by pleading guilty, as part of its credibility consideration. Furthermore, the jury need not have considered why Kennedy and Edwards were not on trial, because the jury was told that the two had avoided trial by pleading guilty. Also, the trial court repeatedly reminded that jury that it was duty-bound to determine the credibility of all witnesses, and, as part of that consideration, should consider the possibility of bias or interest. (Id. at 2673–75.) Courts must presume that jurors followed their instructions. See Marsh, 481 U.S. at 206. On this record, the Court must DENY Petitioner's claim.

## XII. Admission of Photograph

Petitioner claims that the trial court's admission of a photograph of Worcester while he was alive violated Petitioner's rights to due process and a fair trial. (Pet. at 6hhh.) The state appellate court rejected this claim, finding that even if admitting the photograph was an error, such an error was harmless. (Ans., Ex. 4 at 36.)

The trial court admitted a photograph picturing Worcester and Farley, who witnessed the killing and testified at trial, dressed in wedding clothes. (Id. at 34.) The prosecution offered the photograph to show that Farley and Worcester were friends, thus buttressing the believability of Farley's testimony regarding why Worcester was in San Francisco on the day of the killing and why Farley was present. (Id.)

Petitioner's claim is without merit. Even if admission of the photo was an error, Petitioner has not shown that the photograph's admission had "a substantial and injurious effect on the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). Though the photograph may have caused the jurors to feel sympathy with the victim, Farley's testimony that Worcester was shot in front of him would have caused an even more intense reaction. On this record, the Court DENIES Petitioner's claim.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. Accordingly, Petitioner's repeated requests in his petition for an evidentiary hearing are DENIED AS MOOT.

The clerk shall enter judgment in favor of Respondent and close the file.

**IT IS SO ORDERED.**

Dated: August 5, 2009

SUSAN ILLSTON
United States District Judge